(No. 26851.—

JOSEPHINE BARTOLUCCI, Appellant, *vs.* PETER FALLETI, Appellee.

*Opinion filed January 19, 1943—Rehearing denied March 11, 1943.*

HOLLERICH & HURLEY, for appellant.

BURRELL & BURRELL, (DAVID M. BURRELL, of counsel,) for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiff, Josephine Bartolucci, brought this action in the circuit court of La Salle county against defendant, Peter Falleti, to recover damages for personal injuries sustained on January 30, 1937, near the city of Peru, while riding as a guest in defendant's automobile. The court denied defendant's motions for a directed verdict, made at the close of plaintiff's evidence and again at the close of all the testimony. The jury returned a verdict of $12,500 in favor of plaintiff and judgment was rendered on the verdict. Upon appeal, the Appellate Court for the Second District reversed the judgment, without remanding, and entered judgment for defendant and against plaintiff. (*Bartolucci* v. *Falleti,* 314 Ill. App. 551.) The cause is here upon leave to appeal granted by this court.

The accident occurred January 30, 1937, about 10:30 P. M. on a winding gravel road approximately one mile south of Peru. While descending a hill which curved abruptly, southwesterly toward Cedar Creek bridge, the left rear wheel of the 1931 Chevrolet automobile driven by defendant came off. The car toppled over an embankment and dropped fifteen or twenty feet to the bed of Cedar Creek. Upon examination of the wheel after the accident it was found that all bolts except one had been sheared from the hub. The hub or drum from which the wheel had become detached was still on the car.

The complaint, consisting of five counts, was based upon the alleged wilful and wanton misconduct of defendant. Each count alleged his previous knowledge of the surrounding circumstances and conditions, and that he acted with wilful disregard of the consequences. The first count charged that the highway, at the scene of the accident, curved abruptly to the right, making nearly a right-angled turn and immediately thereafter passed across a bridge over Cedar Creek; that the road was approximately fifteen feet wide, high in the center, and constructed on a downgrade; that for 250 feet north and northeast of Cedar Creek bridge the road was covered with ice and very slippery; that the night was dark and rainy, and that the lights of the automobile penetrated but a few feet. The second count charged the reckless operation of the car by defendant in driving along the narrow and winding road toward Cedar Creek, down the grade and around the curve at a high and dangerous rate of speed, and without reducing his speed, contrary to section 48 of an act in relation to the regulation of traffic, approved July 9, 1935. (Ill. Rev. Stat. 1941, chap. 95½, par. 145.) The remaining counts alleged violations of sections 49 and paragraph (a) of section 102 of the same act (Ill. Rev. Stat. 1941, chap. 95½, pars. 146 and 199,) in driving the car downgrade and around the curve at a high and dangerous

rate of speed, and without decreasing the speed, and in driving a car in such unsafe and defective condition as to endanger any person riding therein.

Plaintiff and Lena Mariani met defendant and his friend, Orlando Falassi, the evening of the accident at a tavern in Dalzell. The two couples left Dalzell in defendant's automobile to attend a President's birthday ball at Cedar Point. Lena Mariani sat to the right of defendant, the driver. Plaintiff and Falassi occupied the rear seat, plaintiff being directly behind defendant. From Dalzell they drove through Peru, where defendant drove down a steep hill in second gear, stopped before crossing some railroad tracks, and then drove south on a gravel road. It had rained earlier in the day, and the evening was not cold. According to plaintiff, from the time they left Dalzell until the accident occurred, the car was running smoothly, and there was nothing in its operation suggestive of any mechanical defect; that shortly before the accident she noticed "something that felt like a thump" and felt the car drop on one side; that in "maybe a second or something like that" the car went over the embankment; that she did not know exactly how fast defendant was driving just prior to the accident, but that he did not lessen his speed, which she estimated to be from thirty to thirty-five miles an hour. She further testified that the lights on the car were burning; that she could see possibly the width of the courtroom, and that although she was watching the road she did not notice whether there was any ice on it immediately north of the bridge. She added that "after the thump I know the car wasn't going like it was before. I don't remember whether it continued straight forward or swerved off to the left. * * * I don't recall whether or not Falleti [defendant] attempted to do anything with the car at the time of the thump."

Gus J. Hoffman, commissioner of highways of the township of Peru, testified the road approaching Cedar

Creek bridge from the north sloped south from a point about 400 feet north of the bridge on a thirty per cent grade; that he had occasion to travel over this road from the north about three o'clock on the afternoon of January 30, 1937, and that the road was icy. Joseph Gromann, a State highway policeman, testified he found the car at the bottom of Cedar Creek, facing southwest; that it had rained earlier in the evening, and that "the road was slippery in spots going down hill. Where the gravel was smooth it was slippery driving, and where the gravel was rough it wasn't so bad driving; there would be a little patch of ice where it was smooth."

Evidence introduced by defendant disclosed that on the day of the accident the motor of his car had been repaired, and the bearings and connecting rods tightened. A mechanic testified he spent about five or six hours completing the overhauling, and that, in returning the car to defendant in Oglesby from Peru about eight o'clock P. M., he "didn't notice anything wrong with the brakes at any time while I was in it; the brakes were good. The car did not shimmy from side to side or wobble on the highway. I didn't hear any noise of any kind back in the hub-cap on any wheel of the car."

Defendant testified that prior to delivering his automobile to the mechanic he had never observed anything wrong with any wheel; that he had never taken the wheels off the car, except when he had changed a tire six weeks before; that as they approached the incline, (which he called a "slight slope,") before coming to Cedar Creek bridge, he was driving about twenty-five miles an hour; that he decreased his speed somewhat, "I let up on the gas;" that there was some ice on the road, extending back about fifty feet from the bridge; that as they were descending this incline he noticed the car drop and that it was pulled to the left; that, with both hands on the wheel, he tried to keep the car in the middle of the road; that

applying the brakes only caused the car to skid; that when the left side of the car dropped they were back fifty to seventy-five feet from the bridge, not yet having reached the icy portion; that he was unable to keep the car on the highway, and that after it reached the ice it slid to the left, toppled over and dropped to the bed of the creek, landing upside down. He further stated the lights on his car were shining and that he could see "a good one hundred feet ahead;" that he first applied his brakes just as the wheel came off, when the car started to skid, going around the curve; that he decreased the speed of his car at this time; that the car started to twist and he released his brakes; that the car toppled over sideways and landed on its top, and that the car was then facing west toward the bridge, the direction in which they were headed.

Motions to direct a verdict in favor of defendant, made at the close of plaintiff's evidence and at the close of all the evidence, were denied. A motion to direct a verdict is in the nature of a demurrer to the evidence. In considering such a motion, the evidence must be considered in its aspects most favorable to the party adverse to the motion. (*Shutan* v. *Bloomenthal,* 371 Ill. 244; *Blumb* v. *Getz,* 366 id. 273; *Darmody* v. *Kroger Grocery Co.* 362 id. 554; *Toombs* v. *Lewis,* id. 181; *Pollard* v. *Broadway Central Hotel Corp.* 353 Ill. 312.) This court does not weigh the testimony. Such is the function of the Appellate Court. Where the effect of the Appellate Court's holding is that there is not evidence sufficient, when considered alone, to sustain the charges alleged in the complaint, it becomes the duty of this court to examine the record to determine whether there is any evidence, which, taken with its intendments most favorable to the plaintiff, tends to prove the charge of the complaint. *Sycamore Preserve Works* v. *Chicago and Northwestern Railway Co.* 366 Ill. 11; *Miles* v. *Long,* 342 id. 589; *Hunter* v. *Troup,* 315 id. 293.

Plaintiff, when injured, was riding as a guest in defendant's automobile. The rights of a nonpaying automobile guest to recover for injuries sustained are governed by section 42-1 of the Motor Vehicle Act, (Ill. Rev. Stat. 1941, chap. 95½, par. 58a,) the pertinent portion of which provides: "No person riding in a motor vehicle as a guest, without payment for such ride, * * * shall have a cause of action for damages against the driver or operator of such motor vehicle or its owner or his employee or agent for injury, death or loss, in case of accident, unless such accident shall have been caused by the wilful and wanton misconduct of the driver or operator of such motor vehicle * * * and unless such wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought." Plaintiff's right to recover is, consequently, dependent upon proof that the accident causing the injuries was occasioned by defendant's wilful and wanton misconduct. Ill will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness. *Streeter* v. *Humrichouse*, 357 Ill. 234; *Jeneary* v. *Chicago and Interurban Traction Co.* 306 id. 392.

Plaintiff contends that a violation of a speed statute is evidence of wilful and wanton misconduct, and that such evidence alone warrants submission of the cause to a jury. It is argued that although the present statute does not fix a *prima facie* limit as to speed rounding a curve, (Ill. Rev. Stat. 1941, chap. 95½, par. 146, sec. 49,) it requires that

the driver, even though proceeding at a rate less than the *prima facie* limit of thirty-five miles an hour on highways, shall decrease the speed of his car. Mere violation of a statutory speed limit does not constitute the wilful or wanton misconduct required for the maintenance of an action by a guest. (5 Berry, Law of Automobiles, (7th ed.) sec. 106, p. 133.) A failure to comply with a speed statute or ordinance does not necessarily establish wilfulness or wantonness. The rate of speed and the attending circumstances must also be taken into consideration. (*Streeter* v. *Humrichouse, supra; Balsewicz* v. *Chicago, Burlington and Quincy Railroad Co.* 240 Ill. 238.) It is also insisted that had defendant so reduced his speed the accident would not have happened, notwithstanding the detachment of the wheel. This claim is argumentative and is based on the purported showing that, after the wheel came off, the car moved forward on the drum without changing its course and did not go over the embankment until it reached the east end of the bridge. Uncontroverted testimony shows that the car, after it toppled over the embankment, was facing southwest, tending to corroborate defendant's version that the car slid sideways before falling and that before it fell it was facing west in the direction of the bridge.

Plaintiff next contends that, under the evidence, the jury was warranted in concluding that defendant was driving at a speed greater than reasonable and proper, and such as to endanger the lives of the persons in the car. Her argument is that this conclusion inevitably follows when consideration is given to defendant's familiarity with, and plaintiff's lack of knowledge of, the road; the darkness of the night; the wet and icy condition of the narrow, sloping thoroughfare,—making nearly a right-angled turn as it approached the bridge—and defendant's failure to decrease his speed of thirty to thirty-five miles an hour. Construing the evidence most favorable to plaintiff, together with all reasonable inferences arising therefrom, there is a con-

spicuous lack of proof (a) of any consciousness on the part of defendant that his conduct would naturally and probably result in injury; (b) of any intentional disregard of a known duty, or (c) any absence of care for the life, person or property of others such as exhibited a conscious indifference to consequences.

Even if it be conceded that plaintiff proved negligence on the part of defendant in the present case, the concession does not aid her. Negligence and wilful and wanton misconduct are not synonymous. As has been pertinently observed, "Negligence and wilfulness are as unmixable as oil and water." *Chicago, Rock Island and Pacific Railway Co.* v. *Hamler,* 215 Ill. 525.

Moreover, there is a complete lack of evidence from which it could be deduced that defendant knew or should have known of any defect, latent or otherwise, in the wheels or other portions of his car, as charged in the complaint. The statutory provisions pertaining to the driving of an automobile in a dangerous or unsafe condition are, therefore, inapplicable. The evidence shows that, six weeks prior to the accident, defendant had removed the left rear wheel for the purpose of repairing a flat tire, and his testimony indicates that he did not then or at any time prior to the accident observe any defect. The testimony of the mechanic and the occupants of the car as to the good running condition of the car was to like effect.

Since the proof was insufficient to sustain plaintiff's charge of wilful and wanton misconduct, it is clear that the trial court should have directed a verdict in favor of defendant. It follows that the Appellate Court properly reversed the judgment of the circuit court without remandment. *Darmody* v. *Kroger Grocery Co. supra.*

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*