**Philipp L. Scarlette, a Minor by Philipp Scarlette, His Father and Next Friend and Philipp Scarlette, Individually, Plaintiffs-Appellants, v. Barbara Hummer, Defendant-Appellee.**

**Gen. No. 11,671.**

Second District, Second Division.

May 6, 1963.

Lidschin & Pucin, of Waukegan (Ellis E. Fuqua, of counsel), for appellants.

Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan (Daniel J. Dalziel, Julian Johnson and John F. Grady, of counsel), for appellee.

WRIGHT, P. J.

This is an action brought to recover damages for personal injuries occasioned by the alleged negligence and wilful and wanton misconduct of the defendant, Barbara Hummer, in driving her automobile and striking the plaintiff, Philipp L. Scarlette, a pedestrian.

Plaintiff's complaint consisted of four counts. Count I and II charged the defendant with negligence. Counts III and IV charged the defendant with wilful and wanton misconduct. The case was tried before a jury in the Circuit Court of Lake County and at the conclusion of all the evidence, the trial court granted defendant's motion for a directed verdict as to Counts

III and IV. Counts I and II were submitted to the jury which returned a verdict finding the issues in favor of the defendant. The trial court entered judgment on the verdict and denied plaintiff's post-trial motion for a new trial. This appeal follows.

The accident occurred on November 30, 1960, a short time after 11:30 o'clock a. m. The weather was cold and cloudy but the street was dry. The plaintiff, 10 years of age, was a fifth grade student at the Clearview Grade School in Waukegan, Illinois. The Clearview School is located on Delaware Roard in a residential district. Delaware Road runs north and south and some distance north of the school, it runs into Sunset Road, which is an east-west street. The plaintiff left his school at 11:30 in the morning with Thomas Stephens, another student, to go with him to the Stephens' residence on Sunset Road for lunch. As the two boys walked north on the sidewalk on the east side of Delaware Road towards Sunset Road, they were joined by two other schoolmates, Gary Wright and David Richard Wright.

The four young boys continued north on Delaware to Sunset Road where they turned east on the south sidewalk and followed the sidewalk some 50 feet to a point where the sidewalk came to an end. They then continued on the south side of Sunset Road until they came to a driveway where they played in the snow and threw snowballs for a short time and then proceeded to start across Sunset Road toward the Stephens' residence where the plaintiff and Thomas Stephens were expected for lunch.

Thomas Stephens crossed Sunset Road first and then the plaintiff who was wearing a hooded jacket with the hood pulled over his head started to cross the street and was struck by a Ford automobile being driven in an easterly direction on Sunset Road by the defendant.

140

The plaintiff testified that before he started to cross the street he looked both ways and could see on his left to Delaware Road; that he started to cross the street and got to the middle of the street, and after that only remembers that he was lying on the pavement and a policeman was standing over him. He did not testify whether or not he ever saw defendant's automobile.

The defendant was employed at the Oakdale School as a second grade teacher and had left the school a few minutes after 11:30 o'clock a. m. She drove her automobile south on McAree Road and made a left turn on Sunset Road and then proceeded east. As she approached the children's playground on Sunset Road near Delaware Road, she drove past a road sign which stated "Speed limit—25" and also, a sign which stated "Children's Playground" and the sign contained a picture of a child running; when she had passed three quarters of the playground she saw the boys on the south side of the road. Defendant further testified that as she proceeded east on Sunset Road her speed was about 25 miles per hour and when she first saw the boys playing on the south side of the road, she took her foot off the gas pedal. She further testified that she proceeded on east and that it seemed like all of a sudden the plaintiff jumped right out in front of her; that when the plaintiff ran onto the road that her speed was about 20 miles per hour and that she applied her brakes and tried to turn the wheel to the left.

Albert Willis, a foreman of the Illinois Hydraulic Construction Company, testified that he was working near the scene of the accident and was flagging traffic at a quarter to 12:00 o'clock on that morning and that he noticed a Ford automobile proceeding east on Sunset. At the time he first noticed the car, it was about 150 feet away and he estimated the speed to

141

be about 20 miles per hour; that he noticed children playing on the south side of the road; that he saw one boy run up through the ditch over the hill and he was leaning forward and his head was down; that he had on a heavy coat with a hooded top up around his face and at that time the eastbound car was approximately 100 feet from where he was standing. He further testified that the car slowed down some, to approximately 15 miles per hour, and at that time he looked toward the truck driver who was flagging traffic on the other end of the job and that the next thing he noticed the boy had been hit and the car had been stopped on an angle toward the north side of the road with its front wheels on the center line.

Neither the plaintiff nor his three companions testified concerning the speed of defendant's automobile.

The Waukegan Police investigated the accident and measured skid marks 65 feet in length which were straight but veered to the left or center of the road. The skid marks showed the left side of the car was about the center of the road. The hood of the car was dented in the center from the impact.

It is the theory and contention of the plaintiff that the trial court erred in directing a verdict on Counts III and IV alleging wilful and wanton misconduct, and further that prejudicial and reversible error was committed in certain statements made in the presence of the jury by the defendant and her counsel.

The question presented by plaintiff's first contention is whether on the above facts it can be said as a matter of law that defendant was not guilty of wilful and wanton misconduct. Although it is the well established rule that the question of wilful and wanton misconduct is usually one of fact to be decided by the jury, however, where the evidence viewed in the light most favorable to plaintiff does not tend to show a wilful and wanton act done without regard to the

142

safety of others, a verdict should be directed in favor of the defendant. Robertson v. New York Cent. R. Co., 388 Ill 580, 58 NE2d 527; Bartolucci v. Falleti, 382 Ill 168, 46 NE2d 980.

Our courts have on numerous occasions emphasized the difficulty encountered in attempting to state with accuracy the particular circumstances under which a defendant may be found guilty of wilful and wanton misconduct. Myers v. Krajefska, 8 Ill2d 322, 134 NE2d 277; Hering v. Hilton, 12 Ill2d 599, 147 NE2d 311.

One definition often quoted is found is Schneiderman v. Interstate Transit Lines, 394 Ill 569, 69 NE2d 293:

"A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care."

As pointed out by the court in Myers v. Krajefska, supra, in cases where wilful and wanton misconduct is charged, liability can be founded where the act was done with actual intention or with a conscious disregard or indifference for the consequences when the known safety of other persons was involved.

Our Supreme Court in Bartolucci v. Falleti, supra, has defined wilfullness and wantoness in the following language, "Ill will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that

143

his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal willfulness."

██ When reviewed in the light of the above principles, we think the evidence in the instant case falls far short of being sufficient to support a charge of wilful and wanton misconduct. Construing all the evidence in its aspects most favorable to plaintiff, together with all reasonable inferences arising therefrom, there is an obvious lack of proof, (1) of a consciousness on the part of defendant that her conduct would naturally and probably result in injury; (2) of any intentional disregard of a known duty, or (3) any absence of care for the life, person or property of others such as exhibited a conscious indifference to consequences. There being no evidence to support the charge of wilful and wanton misconduct, it was incumbent upon the trial court, upon request, to withdraw Counts III and IV from consideration by the jury. Trumbo v. Chicago, B. & Q. R. Co., 389 Ill 213, 59 NE2d 92; Bartolucci v. Falleti, supra.

██ Plaintiff complains of improper remarks volunteered by the defendant during the course of the trial. These remarks are all contained in answers which she made in response to questions addressed to her. They were improper in a technical evidentiary sense in that they contain conclusions, however, the trial court promptly struck them and ordered the jury to disregard them. The remarks of defendant are of themselves harmless errors such as are common to the trial of lawsuits. Likewise, we find no reversible error in the remarks and statements of counsel for the defendant. There was also no error in defense counsel

144

attempting to call his law office associate as a witness. Manion v. Chicago, R. I. & P. Ry. Co., 12 Ill App2d 1, 138 NE2d 98.

The judgment of the Circuit Court of Lake County is affirmed.

Judgment affirmed.

SPIVEY and CROW, JJ., concur.