## Clara Larson, Plaintiff-Appellant, v. Clarence M. Fell, Defendant-Appellee.

### Gen. No. 64–43.

Second District.

February 16, 1965.

Hamer & Schuh, of Woodstock, and Percival Thompson, of Chicago, for appellant.

Allen & Herrmann, of Woodstock, and Jerome H. Torshen, of Chicago (C. Russell Allen and Jerome H. Torshen, of counsel), for appellee.

DAVIS, J.

The issues presented in this case are whether the allegations of wilful and wanton conduct were properly taken from the jury and whether the jury's finding for the defendant on the charge of negligence was contrary to the manifest weight of the evidence.

Count I of plaintiff's complaint alleged that Jefferson Street, a northerly and southerly public street, and South Street, an easterly and westerly public street,

intersected within the City of Woodstock; and that plaintiff was a pedestrian walking in a southerly direction from the northeast to the southeast corner of said intersection using the crosswalk therein, in the exercise of ordinary care for her own safety.

It further charged that defendant, who was eastbound on South Street and was approaching, entering and crossing said intersection, carelessly and negligently operated and controlled his said automobile; failed and neglected to keep a reasonable lookout for pedestrians then and there upon the said South Street; operated said automobile at a speed which was greater than was reasonable and proper with regard to traffic conditions and the use of the highway, or so as to endanger the safety of some other person, contrary to and in violation of Section 49 of the Uniform Act Regulating Traffic on Highways; or failed and neglected to yield the right of way to a pedestrian crossing the roadway at a crosswalk at an intersection where traffic control signals were not in place, by slowing down or stopping if need be to so yield the right of way, contrary to and in violation of Section 74 of the Uniform Act Regulating Traffic on Highways.

Count II of plaintiff's complaint charged, mutatis mutandis, that wilful and wanton conduct of defendant caused the plaintiff's injuries.

Defendant's answer denied that plaintiff was in the exercise of ordinary care and was not guilty of wilful and wanton conduct for her own safety, and denied that defendant was guilty of either negligence or wilful and wanton conduct while so operating his automobile.

Four witnesses, including plaintiff and defendant, testified on plaintiff's behalf pertinent to these issues. Defendant also testified on his own behalf. Don J. Liston, a police officer, who arrived at the scene of the accident after the plaintiff had been taken to the hospital, stated that the rear half of defendant's car came to a

stop in the north-south crosswalk in the eastbound lane of traffic on South Street, and that the grille on the left front side of the car was damaged.

The plaintiff, who was 79 years old at the time of the trial, testified that on the day of the accident she had been to the National Tea Store and was walking south on Jefferson Street toward its intersection with South Street. She was carrying a shopping bag in one hand, a striped umbrella in the other; and that it was raining or misting and visibility was fair, when she stopped at the northeast corner of said intersection.

While standing on the curb, she looked to the east and to the west for traffic. She could see a block to the east and saw the Dean Street stoplights one block to the west. She saw no traffic from the east and none from the west between Dean and Jefferson Streets, and none on Jefferson Street to the south. She then proceeded to cross the street to the south at a normal speed and did not again look to the east or west. When about one-half way across the east lane of traffic on South Street and while walking in the crosswalk area, plaintiff was struck by defendant's car. She did not see defendant's car or hear the sound of a horn before the impact.

Margaret Burmeister saw plaintiff standing on the curb at the northeast corner of this intersection just before the accident. She was driving north on Jefferson Street and brought her car to a stop in obedience to the stop sign at the southeast corner of this intersection. She recognized plaintiff, watched her as she crossed the street, and saw her look to the east and west before crossing the street in the crosswalk area. This witness did not see defendant's car until it struck the plaintiff and was not certain whether his car lights were on or off. She did not remember whether the lights on her car were on, although she did remember that the windshield wipers were in operation. Mrs.

Burmeister was the first person to reach the defendant after the accident.

The defendant was called as a witness by plaintiff under section 60 of the Civil Practice Act. On the date in question, he left work at 3:30 p. m. and arrived at the stoplights at the intersection of Dean Street and South Street at about 3:55 p. m. He then drove east on South Street toward its intersection with Jefferson Street.

The weather was foggy and dark, streetlights were on, and some cars were driving with, and some without, lights. The windshield wipers on defendant's car were in operation and visibility was fair. The defendant, whose car was the first at the stoplight, could see about one and a half blocks east on South Street. A car was behind defendant at the stoplight and a car, travelling westerly, was stopped at the east stoplight on South Street.

After the light changed, defendant proceeded easterly in the east traffic lane on South Street. When about one half block from the Jefferson-South Street intersection, a car, which was travelling north on Jefferson Street, proceeded through the intersection. Defendant saw plaintiff when he was about four or five car lengths from the intersection. She was then starting into the street from the northeast curb. He then applied his brakes lightly.

Just before this, a car which had been travelling south on Jefferson Street, turned west on South Street and passed defendant, and a car travelling north on Jefferson Street came to a stop at the stop sign at the southeast corner of South Street. Defendant did not see plaintiff as she walked across the street until she was between the north curb and the center of South Street. Defendant's car was then approaching the intersection, at a speed of 15 to 20 miles per hour, and plaintiff was walking south in the crosswalk area about

4 feet north of the center of South Street. Defendant never sounded his horn, but did then apply his brakes, with force. His car was new and in good mechanical condition. He swerved it a little to the south and it skidded a little to the north and forward into the plaintiff. However, his car did not skid over the center line of South Street and its grille was damaged on the left front side.

In Illinois, standards of wilful and wanton conduct emerged as a rule of law through case by case decisions. After such standards were thus defined, it became the duty of the trial judge in a jury trial where such conduct was charged, upon presentation of a motion for directed verdict, to determine a question of law: whether the evidence in the case was sufficient to support such charge. If so, the case should go to the jury, if not, the Court should direct a verdict thereon.

The precise role of the Court and jury in such litigation has been the subject of much controversy. Justice Holmes advocated judicial dominance in defining a course of conduct. He stated, in Law In Science and Science in Law, 12 Harv L Rev 443, 457 (1899), "that every time that a judge declines to rule whether certain conduct is negligent or not he avows his inability to state the law, and that the meaning of leaving nice questions to the jury is that while if a question of law is pretty clear we can decide it, as it is our duty to do, if it is difficult it can be decided better by twelve men taken at random from the street." It was incomprehensible to him that a standard of conduct, defined reasonably clear as a rule of law, should not, even when its application is difficult, be decided by the judge, rather than by the oscillating verdict of juries. (Also see Holmes, The Common Law 123.)

In contrast to the Holmes view, is that which advocates that the jury under the instruction of the court,

determine, by the opinion of the reasonable man as reflected in its verdict, whether the evidence in the case is sufficient to support the charge of misconduct in question. Under this view the jury determines not only the facts, but also what the law is as applied to those facts. Smith, Judges and Justice—The Judges Role in Personal Injury cases, the University of Illinois Vol 1962. Summer No. 2.

■ In Illinois, the rule is that the question of whether an injury is the result of wilful and wanton conduct is usually one of fact to be determined by the jury from the evidence, yet, where there is no evidence tending to support such charge, viewed in the light most favorable for plaintiff, there is no question of fact to submit to a jury, and a motion to direct a verdict on such charge presents a question of law for the Court. Robertson v. New York Cent. R. Co., 388 Ill 580, 586, 58 NE2d 527 (1945); Greene v. Noonan, 372 Ill 286, 290, 23 NE2d 720 (1939); Scarlette v. Hummer, 41 Ill App2d 138, 142, 143, 190 NE2d 370 (2nd Dist 1963); and Martin v. Cline, 15 Ill App2d 269, 272, 145 NE2d 505 (4th Dist 1957).

Wilful and wanton conduct has been defined in many cases. Myers v. Krajefska, 8 Ill2d 322, 328, 329, 134 NE2d 277 (1956); Mower v. Williams, 402 Ill 486, 490, 84 NE2d 435 (1949); Bartolucci v. Falleti, 382 Ill 168, 174, 46 NE2d 980 (1943). In Scarlette v. Hummer, 41 Ill App2d 138 (2d Dist 1963), at pages 143, 144, 190 NE2d 370 the Court stated:

"One definition often quoted is found in Schneiderman v. Interstate Transit Lines, 394 Ill 569, 69 NE2d 293:

'A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure after knowl-

edge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.'

As pointed out by the court in Myers v. Krajefska, supra, in cases where wilful and wanton misconduct is charged, liability can be founded where the act was done with actual intention or with a conscious disregard or indifference for the consequences when the known safety of other persons was involved.

"Our Supreme Court in Bartolucci v. Falleti, supra, has defined wilfulness and wantonness in the following language, 'Ill will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness.' "

Such conduct is further defined in Martin v. Cline, 15 Ill App2d 269 (4th Dist 1957), at page 273, 145 NE2d 505, where the Court stated:

"It is, of course, difficult to lay down a general rule by which we may determine what type of conduct the law considers to be wilful and wanton misconduct. However, it may be stated generally that wilful and wanton misconduct is a more serious transgression than is negligence, and that an important distinction is in the mental attitude. Often negligence may con-

425

sist of a mere inadvertence, or a momentary lapse from that degree of attentiveness required by due care. On the other hand, it is frequently said that a wanton act involves a *conscious indifference* to a known danger. It is based on the concept that, under the known or plainly observable circumstances, the doing or failing to do something will naturally and probably result in injury to another, and the defendant must have been aware of that situation, and ignored it."

 This case lacks these attributes of wantonness and wilfulness. The evidence when construed in its aspects most favorable to plaintiff, together with all reasonable inferences arising therefrom, fails to prove a consciousness on the part of the defendant that his conduct would naturally and probably result in injury to another; and, it was not the type conduct which exhibited a conscious indifference to consequences and constituted constructive or legal wilfulness. It was more in the nature of momentary lapse from that degree of attentiveness required by due care.

Consequently, the trial Court properly directed a verdict as to Count II of plaintiff's complaint and submitted the cause to the jury on the negligence count. The jury returned a not guilty verdict.

 The plaintiff urges that the verdict of the jury on the negligence count in the complaint is against the manifest weight of the evidence. In order for plaintiff to recover, she had to prove that before, and at the time of the occurrence, she was in the exercise of ordinary care for her own safety; that a negligent act was committed by the defendant; that the plaintiff was injured, and that the negligence of the defendant was the cause of the injuries complained of.

The testimony of the plaintiff was that she looked to the east and west and to the south, before walking from the curb into the street and saw no traffic ap-

426

proaching; and that she then proceeded to cross the street without looking again to the east or to the west. She also stated that she did not see the Burmeister car which was parked at the stop sign, facing north, at the southeast corner of the intersection in question.

 In crossing a street or highway, a pedestrian must make reasonable use of all senses in order to observe impending danger. In Moran v. Gatz, 390 Ill 478, 62 NE2d 443 (1945), (cited with approval in Vasic v. Chicago Transit Authority, 33 Ill App2d 11 (1st Dist 1961) ), at pages 485 and 486, 180 NE2d 347 the Court stated:

> "The generally accepted rule is that while a statute such as ours gives pedestrians the right of way, it does not confer upon them an advantage which necessarily absolves them from guilt of contributory negligence. Each case must be determined from its particular facts. . . .

> "The rule seems to be quite universal that a pedestrian's failure to keep a constant lookout, or to look again after having determined that he can safely cross ahead of approaching traffic, is not contributory negligence as a matter of law but it is a question for a jury whether he was in the exercise of ordinary care for his own safety. . . . (Citing cases.)"

 Under the evidence in this case, the jury could well have found that the plaintiff was free from, or guilty of contributory negligence. Proof that she was walking in an unmarked crosswalk area on South Street, in compliance with Section 74 of the Uniform Act Regulating Traffic on Highways (Ill Rev Stats 1963, c 95½ par 171) is some evidence to show due care on her part, but is not conclusive on the question of contributory negligence. Neering v. Illinois Cent.

R. Co., 383 Ill 366, 381, 382, 50 NE2d 497 (1943); Hulke v. International Mfg. Co., 14 Ill App2d 5, 43, 142 NE2d 717 (2nd Dist 1957).

The statement of the Court in Johnson v. Skau, 33 Ill App2d 280 (2nd Dist 1962), at page 285, 179 NE2d 40, is particularly apropos of the circumstances in the case at bar, to wit:

> "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable. Paul Harris Furniture Company v. Morse, 10 Ill2d 28, 139 NE2d 275. The question of contributory negligence of a pedestrian is one which is preeminently for the consideration of a jury. Moran v. Gatz, 390 Ill 478, 62 NE2d 443."

This Court cannot reweigh the evidence and set aside the jury verdict merely because a different result may seem more reasonable.

To be against the manifest weight of the evidence requires that an opposite conclusion be clearly evident. Borst v. Langsdale, 8 Ill App2d 88, 93, 130 NE2d 520 (2nd Dist 1955); Griggas v. Clauson, 6 Ill App2d 412, 419, 128 NE2d 363 (2nd Dist 1955); Olin Industries Inc. v. Wuellner, 1 Ill App2d 267, 271, 117 NE2d 565 (4th Dist 1954). Such conclusion is not clearly apparent in the case at bar. Accordingly, the judgment of the trial Court is affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.