NOTICE
Decision filed 03/29/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210056-U

NO. 5-21-0056

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| KATHY WILSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Clinton County. |
| | ) | |
| v. | ) | No. 18-L-23 |
| | ) | |
| BREESE ELEMENTARY DISTRICT NO. 12, | ) | Honorable |
| | ) | Stanley M. Brandmeyer, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Boie concurred in the judgment.
Justice Welch concurred in part and dissented in part.

**ORDER**

¶ 1  *Held*: The trial court did not err in finding that the area where plaintiff fell was public property that was intended or permitted to be used for recreational purposes and that plaintiff's negligence claim was barred under section 3-106 of the Tort Immunity Act. The trial court erred in entering summary judgment for defendant where there was a genuine issue of material fact regarding whether defendant's conduct was willful and wanton.

¶ 2  The plaintiff, Kathy Wilson, filed a complaint against the defendant, Breese Elementary School District No. 12, seeking damages for injuries she sustained when she tripped on an object at the entrance to the large gymnasium at Breese Elementary School. The plaintiff alleged that her injuries resulted from the defendant's negligence (count I)

1

and its willful and wanton conduct (count II). The defendant filed a motion for summary judgment on both counts. The defendant claimed that it was immune from liability for negligence under section 3-106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-106 (West 2020)), and that the acts and omissions alleged by the plaintiff did not rise to the level of willful and wanton conduct. The trial court entered summary judgment for the defendant on both counts, and the plaintiff appealed. We affirm in part, reverse in part, and remand for further proceedings.

¶ 3                                I. BACKGROUND

¶ 4     On November 12, 2017, a craft fair was held at the Breese Elementary School. More than 70 vendors participated in the event. Vendors set up booths in the school's large gymnasium, small gymnasium, and cafeteria. The event began at 10 a.m. and ended around 3 p.m.

¶ 5     At approximately 7 a.m. on November 12, 2017, the school's head custodian, Julianna Voss, arrived at the school to prepare for the event. Voss opened two of the doors at the entrance to the large gymnasium and removed the vertical dividing bar between them to provide a wider entry so that vendors could move larger display items into the gymnasium. The dividing bar was secured by a metal bracket that protruded from the floor. After removing the dividing bar, the metal bracket was exposed. Voss placed an orange safety cone over the protruding bracket so that people would not trip over it. She did not replace the dividing bar after the vendors moved their displays into the gymnasium.

2

¶ 6    Shortly after 10 a.m. on November 12, 2017, the plaintiff arrived for the craft fair. The plaintiff was accompanied by her daughter, Rachel Massa, and Rachel's son, who was in a stroller. They entered the school building through the front door. The entrance to the large gymnasium was 15 to 20 feet from the front door. As they approached the doorway to the large gymnasium, the plaintiff's daughter was pushing the stroller, and the plaintiff was following behind her. Small groups of visitors were entering the gymnasium just ahead of them. When the plaintiff stepped through the gymnasium doorway, her foot came into contact with either the metal bracket protruding from the floor or the orange cone that covered it. She tripped and fell to the floor, injuring her left leg. The plaintiff went to a nearby hospital. She was diagnosed with a nondisplaced fracture of the fibula in her left leg.

¶ 7    On September 27, 2018, the plaintiff filed a premises liability action against the defendant. In the second amended complaint, at issue here, the plaintiff alleged that she was walking into the gymnasium behind several other people; that her foot came into contact with a bracket protruding from the floor, causing her to fall; and that the presence of the other people obscured the plaintiff's view and prevented her from seeing and avoiding the dangerous condition at the entrance to the gymnasium. The plaintiff further alleged that the defendant had actual or constructive notice of the dangerous condition on its premises because its agent had created that condition. In count I, the plaintiff claimed that the defendant negligently and carelessly failed to maintain its premises in a good and safe condition. She alleged, among other things, that the defendant negligently and carelessly (a) removed a vertical dividing bar between two of the doors at the entrance to

3

the gymnasium and thereby exposed a metal bracket that protruded from the floor; (b) covered the protruding bracket with a small orange cone that was inadequate to warn of the tripping hazard; (c) failed to remove the protruding bracket or provide adequate barriers to prevent plaintiff and other invitees from encountering the bracket; and (d) failed to properly warn the plaintiff and other invitees of the dangerous condition at the entrance to the gymnasium, using signs or verbal warnings.

¶ 8     In count II, the plaintiff alleged that the defendant engaged in a course of action that showed an utter indifference to or conscious disregard for the plaintiff's welfare. The plaintiff alleged that the defendant committed recklessly willful and wanton acts and omissions. The plaintiff realleged those acts and omissions listed in count I, and further alleged that the defendant failed to provide adequate barriers to prevent plaintiff and other invitees from encountering the protruding bracket; failed to properly manage the number of invitees entering the gymnasium simultaneously in order to make the bracket readily observable; and created conditions whereby the plaintiff's observation of the bracket was obstructed by others entering the gymnasium. The plaintiff asserted that the defendant's agent removed the center bar and placed a small cone over the exposed metal bracket, even though she knew that the cone and bracket posed a serious tripping hazard. The plaintiff also asserted that the defendant should have reasonably anticipated that the small orange cone and metal bracket were below eye level, and that the plaintiff's view of the bracket and cone would have been obscured by other persons entering the gymnasium.

¶ 9     In the answer to the second amended complaint, the defendant admitted that its agent removed the vertical dividing bar and placed an orange cone over the metal bracket

4

protruding from the floor at the entrance to the large gymnasium. The defendant denied that it had actual or constructive notice of a dangerous condition on its premises, and it denied all of the allegations of negligence and willful and wanton conduct. The defendant filed affirmative defenses, asserting that it had tort immunity, that the condition of the premises was open and obvious, and that the plaintiff was contributorily negligent.

¶ 10 Thereafter, the parties engaged in discovery. Depositions were taken of the plaintiff, three members of the plaintiff's family who attended the craft fair, and the school custodian, Julianna Voss.

¶ 11 The plaintiff testified that she had not previously attended a craft show at Breese Elementary School. The plaintiff recalled that as she and her daughter approached the doorway to the large gymnasium, a cluster of people were entering the gymnasium just ahead of them. The plaintiff was looking ahead, but there were people in front of her so she could not see into the craft fair. She was walking behind her daughter and the other people, just "looking ahead, walking in," and "the next thing, I fell." The plaintiff stated that her foot caught on something firm. She tripped on "the orange cone or the thing that was in the middle of the doorway." She did not see the orange cone before she tripped. When the plaintiff looked back toward the entrance to the gymnasium, she saw a little orange cone. The plaintiff testified that the cone was small, and that all of the people entering the gymnasium and the stroller "totally blocked" her from seeing it. She noted that there were no signs placed at eye level to warn people to watch their step. She did not observe anyone warning people to be careful because of the obstruction at the entrance to gymnasium.

¶ 12    The plaintiff's daughter, Rachel Massa, testified that she was pushing her son in a stroller, and that the plaintiff was right behind her left shoulder as they walked into the gymnasium. Rachel recalled that the foyer was crowded with people walking in. There were tables out in the foyer area off to the right of the gymnasium entrance. Rachel did not see the orange cone when she walked into the gymnasium. She recalled that her head was up, and she was looking out at all of the craft tables. No one warned her about the cone before she walked through the entrance to the gymnasium. Rachel looked back toward the entrance to determine what caused the plaintiff to fall. She noticed an orange cone in the doorway. She could not recall if the cone was upright. Rachel testified that the cone was four or five inches tall and flat on top. Rachel also testified that someone put the vertical dividing bar back into the doorway shortly after the plaintiff fell.

¶ 13    The plaintiff's daughter, Becky Stafford, and her husband, Jason Stafford, went to the school around 8:30 a.m. on November 12, 2017. Jason's mother was one of the vendors, and Jason and Becky helped her set up her booth in the large gymnasium. Jason testified that he made 5 to 10 trips from the parking lot to the large gymnasium that day. Jason recalled that there was a double door at the gymnasium entrance. Both doors were open and the vertical dividing bar between them had been removed. Jason testified that he saw a "cutoff orange cone" in the middle of the floor at the entrance to the gymnasium. Jason stated that a person's view of the cone could be obscured by people entering the gymnasium. He did not trip on the cone that day. Jason testified that someone put the vertical bar back into the doorframe right after the plaintiff fell.

¶ 14    Becky Stafford testified that she helped her mother-in-law set up a booth in the large gymnasium on the morning of November 12, 2017. As Becky carried items into the gymnasium, she noticed that the vertical dividing bar between the doors had been removed, and that a "tiny" orange cone had been placed in the center of the doorway. She estimated that the cone was a couple of inches tall. Becky carried some larger items into the gym. She noticed that some of the larger items blocked her view of the doorway into the gymnasium. Becky testified that no one was warning people to watch out for the orange cone as they entered the gymnasium. Becky did not see anyone trip on the cone that day. Becky recalled that someone put the vertical bar back into the doorframe shortly after the plaintiff fell.

¶ 15    Julianna Voss testified that she worked at the school for approximately 19 years. Voss arrived at the school at 7 a.m. on November 12, 2017, to help with the craft fair. She removed the vertical dividing bar at 7:30 a.m. so that the vendors could set up their displays. The vertical dividing bar was secured at the base of the doorway by a metal bracket. Voss stated that she placed an orange cone on top of the metal bracket for safety. She did not place additional signs in the area to warn about the bracket. Voss did not replace the vertical bar after the vendors had moved their displays inside the gymnasium because the vendors and visitors may have needed to move other items into and out of the gymnasium during the fair. Voss testified that she was in and out of the building that day. Someone else replaced the vertical bar after the plaintiff fell. Voss did not witness the plaintiff's fall. She was not aware of any prior falls due to the removal of the vertical bar at the entrance to the gymnasium.

¶ 16    Voss testified that she did not know whether the school district had a written policy regarding the removal of the vertical bar. She stated that the school district had a verbal policy "never to remove them," and "if you do remove it, put it right back." Later in her deposition, Voss clarified that the superintendent gave her those directions on the Monday following the accident. Voss testified that she did not remove the vertical bar for prior craft fairs. She stated that she had removed the vertical bar in the past so that a marching band's drumline could get through the doorway, and she replaced the vertical bar once the drumline entered the gymnasium.

¶ 17    After conducting this discovery, the defendant filed a motion for summary judgment on both counts of the second amended complaint. The defendant argued that it was immune from liability for ordinary negligence under section 3-106 of the Tort Immunity Act (745 ILCS 10/3-106 (West 2016)), because the gymnasium was public property that was intended or permitted to be used for recreational purposes. The defendant also asserted that the recreational immunity afforded in section 3-106 extended to structures, such as the doorway to the gymnasium, because those structures increased the usefulness of the recreational property. The defendant claimed that it was entitled to a summary judgment on count II, because the acts alleged by the plaintiff did not rise to the level of willful and wanton conduct. The defendant argued that it had no knowledge of any prior incidents in which individuals had been injured as a result of tripping on the exposed metal bracket or a safety cone at the entrance to the large gymnasium. The defendant also argued that it had taken affirmative steps to warn of the hazard by placing an orange safety cone over the exposed bracket, and thus, did not act with utter indifference to or a conscious

8

disregard for the safety of the plaintiff. In an argument made in the alternative, the defendant asserted that it had no duty to protect the plaintiff from open and obvious conditions on the premises.

¶ 18    In support of its motion for summary judgment, the defendant attached the deposition transcripts of the plaintiff, Rachel Massa, Justin Stafford, and Becky Stafford. The defendant also submitted supporting affidavits of Julianna Voss, Evelyn Schrand, Pamela Voss, and Jenny Santel.

¶ 19    The affidavit of Julianna Voss was executed on August 24, 2020, approximately 10 months after her discovery deposition. In the affidavit, Voss stated that she worked at the craft fair on November 12, 2017. At approximately 7:30 that morning, Voss removed the vertical dividing bar between two of the doors to the large gymnasium to create a wider doorway so that the vendors could move their displays inside. She then placed an orange cone on top of "the little piece of metal coming from the bottom of the floor." Voss stated that the orange cone was six inches tall, and the metal bracket was two and five-eighths inches tall and three and three quarters inches wide. Voss placed the cone on top of the bracket to warn people so that they would not trip on the metal bracket. She did not replace the vertical dividing bar after the vendors had moved their items inside the gymnasium. Voss was not at the gym when the plaintiff fell. She was not aware of any prior falls due to the removal of the vertical dividing bar at the entrance to the large gymnasium.

¶ 20    Evelyn Schrand was a music teacher at Breese Elementary School at the time of this incident. In her affidavit, Schrand noted that 75 vendors had participated in the craft fair in November 2017, and that the event was well-attended. Schrand recalled that the school

9

custodian removed the vertical dividing bar between two of the doors to the large gymnasium so that the vendors could move their large displays into the gym. She stated that the vertical dividing bar had been removed for prior crafts fairs, "probably by a janitor." "We placed an orange cone on the ground to cover up a small piece of metal on the ground where we removed the bar so nobody would fall." Schrand did not witness the plaintiff's fall. Schrand stated that the plaintiff was the only person who fell during the craft fair on November 12, 2017. Schrand was unaware of any prior falls due to the removal of the vertical dividing bar at the entrance to the large gymnasium.

¶ 21    Pamela Voss was a "band parent" and the chair of the November 2017 craft fair. In her affidavit, Pamela Voss recalled that about half of the vendors set up on the evening of November 11, 2017, and the remainder set up the following morning. Pamela Voss stated that a check-in table was located to the right of the main entrance to the large gymnasium. Volunteers staffed the check-in table, handing out maps showing the location of each vendor. Pamela Voss stated that the custodian had removed the vertical dividing bar between two of the doors to the large gymnasium on the morning of November 12, 2017, to allow vendors to move large display items into the gymnasium. She averred that the bar had been removed for six other craft fairs that she had chaired. She stated that while she "may or may not have placed the orange cone down, in November 2017, the procedure was when the vertical bar was removed an orange cone was put down." Pamela Voss did not witness the plaintiff's fall. She spoke with the plaintiff after her fall. The plaintiff stated that she was pushing a stroller and missed the cone because the person in front of her had

blocked her immediate view of it. Pamela Voss was unaware of any prior falls due to the removal of the vertical dividing bar at the entrance to the large gymnasium.

¶ 22    Jenny Santel was a business manager employed by the defendant. Santel averred that the large gymnasium at Breese Elementary School was used for recess, physical education classes, extracurricular sporting events, and for choral and band concerts, assemblies, holiday programs, graduations, and craft fairs. Santel stated that she was not aware of any prior falls at the entrance to the large gymnasium due to the removal of the vertical dividing bar. As the school district's business manager, she would have received reports of accidents and injuries that occurred on school district property.

¶ 23    The plaintiff filed a response in opposition to the motion for summary judgment. The plaintiff claimed that section 3-106 of the Tort Immunity Act did not apply to the facts of her case. She argued that the doorway where she fell was only incidentally connected to the large gymnasium, served no recreational purpose, and did not enhance the usefulness of the gymnasium. The plaintiff also claimed that there was a genuine issue of material fact as to whether the defendant's actions demonstrated a willful and wanton disregard for the safety of persons entering and leaving the gymnasium. The plaintiff argued that the defendant's actions in creating a tripping hazard, failing to adequately warn visitors about the tripping hazard, and permitting groups of people to pass through the entrance simultaneously, created a hazardous condition where serious injury was not just possible, but almost certain to occur. She asserted that the defendant had actual or constructive notice of the hazardous condition because its agent had created the hazard. Finally, the plaintiff argued that there were genuine issues of material fact as to whether the hazard was open

and obvious and whether the distraction exception to the open and obvious rule applied. In support of her arguments, the plaintiff attached her own discovery deposition, and the discovery depositions of Rachel Massa and Julianna Voss.

¶ 24 The defendant filed a supplemental affidavit by Julianna Voss, dated January 8, 2021. In the supplemental affidavit, Voss averred that there were no written or verbal policies regarding the removal of the vertical dividing bar as of November 17, 2017. Voss also stated that while she had not removed the vertical dividing bar for prior fairs, that did not mean that the bar had not been removed by others.

¶ 25 The trial court heard arguments on the motion for summary judgment and took the matter under advisement. After reviewing the pleadings, the supporting documents, and the arguments of the parties, the trial court granted summary judgment in favor of the defendant. The court found that the area where the plaintiff fell was public property that was intended or permitted to be used for recreational purposes, and that the plaintiff's negligence claim was barred under section 3-106 of the Tort Immunity Act. The court also found that the defendant's conduct could not be characterized as willful and wanton.

¶ 26                                  II. ANALYSIS

¶ 27 In the first point on appeal, the plaintiff claims that the trial court erred in finding that the defendant was immune from liability for her injuries under section 3-106 of the Tort Immunity Act (745 ILCS 10/3-106 (West 2016)). The plaintiff argues that section 3-106 does not apply in her case because she fell in the doorway to the school gymnasium, and the doorway was not within the recreational area, but merely provided an entrance to a recreational area and served no recreational purpose.

12

¶ 28 Summary judgment is appropriate only where the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). In determining whether a genuine issue of material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). A triable issue exists when the material facts are in dispute, or when the material facts are undisputed but reasonable persons might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. The trial court's decision to grant summary judgment is reviewed *de novo*. *Adams*, 211 Ill. 2d at 43.

¶ 29                              A. Negligence

¶ 30 Local public entities, in general, have a duty to exercise ordinary care to maintain public property in a reasonably safe condition. *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 377-78 (1995). This duty existed at common law and was codified in section 3-102 of the Tort Immunity Act. 745 ILCS 10/3-102 (West 2016); *Bubb*, 167 Ill. 2d at 377-78. When the legislature enacted the Tort Immunity Act, it did not create new duties. Rather, the legislature granted immunities and defenses to protect public entities and public employees from liability arising from the operation of government. See 745 ILCS 10/1-101.1 (West 2016). Unless an immunity provision applies, public entities are liable in tort to the same extent as private parties. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368-69 (2003).

¶ 31 Here, the issue is whether the doorway to the large gymnasium is public property that is intended or permitted to be used for a recreational purpose within the meaning of section 3-106 of Tort Immunity Act. Section 3-106 of the Tort Immunity Act provides:

"§ 3-106. Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3-106 (West 2016).

¶ 32 The purpose of section 3-106 is to encourage the development and maintenance of public parks, playgrounds, and similar public property that is intended to be used for recreational purposes. *Bubb*, 167 Ill. 2d at 378. In providing immunity under section 3-106, the legislature sought to prevent the diversion of funds from their intended purpose to pay damage claims. *Bubb*, 167 Ill. 2d at 378.

¶ 33 When considering whether section 3-106 applies in a given case, the court will conduct a case-by-case examination of the nature of the property and its past use. *Bubb*, 167 Ill. 2d at 384. Section 3-106 will apply if the public property is intended or permitted to be used for recreational purposes, regardless of the primary purpose of the property. *Bubb*, 167 Ill. 2d at 384. However, section 3-106 should not be read to provide immunity to any public area where recreation might occur. The use of public property for recreational purposes may be so incidental that 3-106 would not apply. *Rexroad v. City of Springfield*,

14

207 Ill. 2d 33, 42-43 (2003); *Bubb*, 167 Ill. 2d at 382. Section 3-106 may also apply to "facilities or structures that increase the usefulness of public property intended or permitted to be used for recreational purposes." *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 508 (1997). Section 3-106 immunity depends upon the character and nature of the property as a whole, rather than the activity being performed at the time of the injury. *Rexroad*, 207 Ill. 2d at 43; *Bubb*, 167 Ill. 2d at 379.

¶ 34    Here, the plaintiff was injured when she tripped on an object in the doorway of the large gymnasium at Breese Elementary School. On the day of the plaintiff's fall, the gymnasium was being used for a craft fair. There is no dispute that the gymnasium was a public property that was intended or permitted to be used for recreational purposes. It had been used for sporting events, physical education classes, band concerts, craft fairs, and other recreational programs. The doorway where the plaintiff tripped and fell was within the bounds of the gymnasium. It was part of the structure of the gymnasium, and it served to provide access to that recreational facility. The doorway also increased the usefulness of the gymnasium. After considering the character and nature of the property as a whole, we find that the doorway at issue was integral to the gymnasium. Thus, this case is factually distinguishable from cases in which the character of a parking lot or walkway was found to be nonrecreational. See, *e.g.*, *Rexroad*, 207 Ill. 2d at 43. Based upon the facts in the record, the trial court did not err in finding that plaintiff's negligence claim was barred under section 3-106 of the Tort Immunity Act.

¶ 35                     B. Willful and Wanton Conduct

¶ 36     Next, the plaintiff claims that the trial court erred in granting summary judgment for the defendant because there is a genuine issue of material fact as to whether the defendant's conduct was willful and wanton. She argues that the defendant's agent removed a piece of equipment that, if left in place, would have prevented plaintiff's injuries. She also argues that the defendant's agent deviated from her standard operating procedures when she failed to replace the vertical dividing bar at the entrance to the gymnasium before the craft show opened to the public, and that the deviation resulted in serious injuries to the plaintiff. The plaintiff contends that a jury should determine whether the placement of a small orange cone over the exposed bracket in the doorway to the gymnasium was an adequate response to a known danger.

¶ 37     Willful and wanton conduct is an exception to the immunity granted in section 3-106 of the Tort Immunity Act. See 745 ILCS 10/3-106 (West 2016). "Willful and wanton conduct," as used in the Tort Immunity Act, means "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2016). "Willful and wanton" includes "a range of mental states" from actual or deliberate intent to cause harm, to utter indifference for the safety of others or their property, to conscious disregard for the safety of others or their property. *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 235 (2007).

¶ 38     In determining whether willful and wanton conduct is present in a given case, courts will scrutinize the facts in the record. *Hicks v. City of O'Fallon*, 2019 IL App (5th) 180397,

16

¶ 47. Under the facts in one case, willful and wanton acts "may be only degrees more than ordinary negligence," while under the facts in another case, willful and wanton acts "may be only degrees less than intentional wrongdoing." *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 275-76 (1994). Whether a party's conduct is willful and wanton is generally a question for the trier of fact. *Murray*, 224 Ill. 2d at 245; *Hicks*, 2019 IL App (5th) 180397, ¶ 48. A court may find as a matter of law that a public entity's actions do not amount to willful and wanton conduct where no contrary conclusion may be drawn from the record presented. *Hicks*, 2019 IL App (5th) 180397, ¶ 48. If, however, the facts of the case permit more than one reasonable conclusion, including one unfavorable to the movant, summary judgment should be denied. *Hadley v. Witt Unit School District 66*, 123 Ill. App. 3d 19, 23 (1984).

¶ 39   A willful or wanton act must have been intentional, or it must have been committed under circumstances showing a reckless disregard for the safety of others, such as the failure, after having knowledge of an impending danger, to exercise ordinary care to prevent the danger, or the failure to discover the danger through recklessness or carelessness when the danger could have been discovered by the exercise of ordinary care. *American National Bank & Trust Co. v. City of Chicago*, 192 Ill. 2d 274, 285 (2000). The party committing a willful and wanton act or omission " 'must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury.' " *Oelze v. Score Sports Venture, LLC*, 401 Ill. App. 3d 110, 122-23 (2010) (quoting *Bartolucci v. Falleti*, 382 Ill. 168, 174 (1943)). Willful and wanton conduct may be established where a public entity (a) has been informed of a dangerous

condition; (b) knows that others have been injured because of that condition; or (c) intentionally removes a safety feature or device from the recreational property. *Thurman v. Champaign Park District*, 2011 IL App (4th) 101024, ¶ 10.

¶ 40    In this case, the pleadings and supporting materials show the existence of a material issue of genuine fact regarding whether the defendant acted with a conscious disregard for the safety of the plaintiff and others attending the craft fair. There is some evidence to show the defendant was on notice that a tripping hazard on its premises posed a risk of serious injury to the plaintiff and other visitors and vendors attending the fair. More than 70 vendors participated in the fair, and crafts were on display in the large gymnasium. Julianna Voss, the head custodian, testified that she removed the vertical dividing bar from the doorway to the large gymnasium to accommodate vendors moving large displays into the gymnasium. She placed a small orange safety cone over the exposed metal bracket to warn others of the tripping hazard, but she did not replace the vertical dividing bar once the vendors had assembled their displays. Neither Voss, nor any other of the defendant's agents, posted signs or directed volunteers to warn persons of the tripping hazard at the entrance to gymnasium. The plaintiff testified that she did not see the cone as she entered the gymnasium because it was obscured by groups of people entering just ahead of her. Additionally, there is some evidence that on November 12, 2017, Voss deviated from her ordinary operating procedure with respect to the gymnasium doors. Voss testified that she had not removed the vertical dividing bar for prior craft fairs held in the large gymnasium. She also testified that she had removed the bar to permit a marching band to enter the large gymnasium, but then replaced it immediately after the band entered the gymnasium.

18

¶ 41 The defendant argues that its actions cannot be characterized as willful and wanton, where its agents took some action to guard against the hazard, and where it had no knowledge of prior injuries. To the extent that the defendant is contending that any action taken in response to a known danger should be sufficient to insulate a defendant from allegations of willful and wanton conduct, we disagree. To establish willful and wanton conduct in the absence of evidence of prior injuries, courts have required some evidence that a condition or activity is associated with a risk of injury, and that the defendant failed to take adequate safety precautions in light of its knowledge of the danger. See, *e.g.*, *Murray*, 224 Ill. 2d at 246; *Hadley,* 123 Ill. App. 3d at 23. As noted above, the plaintiff presented some evidence to show the existence of a genuine issue of material fact regarding whether the defendant was on notice that a dangerous condition on its premises posed a risk of serious injury and whether the defendant took adequate safety precautions in light of its knowledge of the danger. The purpose of summary judgment is not to try a question of fact, but to determine whether one exists. *Adams*, 211 Ill. 2d at 43-44. Construing the pleadings, the depositions, and the affidavits on file strictly against the movant and liberally in favor of the nonmovant, we find that there is a genuine issue of material fact regarding whether the defendant's conduct was willful and wanton. Therefore, the trial court erred in entering a summary judgment for the defendant on count II of the second amended complaint.

¶ 42 Finally, the defendant argues, in the appellee's brief, that summary judgment was properly entered because it had no duty to protect the plaintiff from an open and obvious condition on its premises. The defendant raised this affirmative defense as an alternative

19

argument in support of summary judgment, but the trial court did not reach that argument when it entered summary judgment in favor of the defendant. The trial court made no findings regarding whether the condition on the defendant's premises was open and obvious. Likewise, the trial court did not address the plaintiff's contention that there were material issues of genuine fact as to whether the condition was open and obvious and whether the distraction exception to the open and obvious rule applied. Because these questions have not been addressed by the trial court, we decline to consider them.

¶ 43                                    III. CONCLUSION

¶ 44    Accordingly, the judgment of the circuit court is affirmed in part and reversed in part. The cause is remanded for further proceedings.

¶ 45    Affirmed in part and reversed in part; cause remanded.


¶ 46    JUSTICE WELCH, concurring in part and dissenting in part:

¶ 47    I agree that the trial court properly granted the defendant's motion for summary judgment as to count I—the plaintiff's injuries being the result of the defendant's negligence—where the defendant is immune from liability for negligence under section 3-106 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/3-106 (West 2020)). The plaintiff's argument that the door to the gymnasium is only incidentally connected to the large gymnasium, served no recreational purpose, and did not enhance the usefulness of the gymnasium as part of the gymnasium's structure is unsupported by the plain language of the statute. The Act explicitly includes "buildings or other enclosed recreational facilities." The statute does not differentiate between the walls

20

and floors of a recreational facility and its doors, windows, or frames. A result under the plaintiff's reasoning would be nonsensical and contrary to the plain language of the statute. Therefore, there is no dispute as to any genuine issue of material fact, and summary judgment in favor of the defendant was proper where it was immune from liability for negligence under the Act. I therefore concur with the order as to count I.

¶ 48 However, I respectfully disagree with my colleagues as to count II—the plaintiff's injuries resulting from the willful and wanton conduct of the defendant—and believe that the trial court was correct in granting summary judgment in favor of the defendant where there was no factual dispute as to whether the defendant's conduct rose to the level of being willful or wanton. There is no dispute that (1) the metal bar was removed from the doorway, (2) there was a metal object protruding from the floor where the bar had been attached, (3) the bar was removed at the time of the plaintiff's injury, and (4) an orange cone had been placed over the metal object on the floor. These facts are not disputed, and this conduct by the defendant does not rise to the level of willful or wanton conduct as cited by the majority. As there was no dispute as to any material facts relating to the defendant's conduct in removing the bar and placing the cone, the defendant was entitled to judgment as a matter of law, and the trial court was proper in granting summary judgment in favor of the defendant as to count II. I therefore dissent from the portion of the order reversing the trial court's judgment with regards to count II and remanding for further proceedings.