Josephine Bartolucci, Appellee, v. Peter Falleti, Appellant.

Gen. No. 9,757.

Heard in this court at the February term, 1942. Judgment reversed. Opinion filed May 14, 1942.

DUNCAN & O'CONOR, of Ottawa, for appellant.

HOLLERICH & HURLEY, of La Salle, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

Peter Falleti has appealed from a judgment of the circuit court of La Salle county for $12,500 against him in an action by Josephine Bartolucci for damages on account of personal injuries sustained by her in an automobile accident while riding as a guest in his car. The accident occurred at about 10:30 P.M. on the night of January 30, 1937, on a winding gravel road south of Peru. The left rear wheel of the car came off while descending a hill. The car left the road, went over an embankment 15 or 20 feet into the bed of Cedar Creek, and turned over.

The guest statute of this State (Ill. Rev. Stat. 1941, ch. 95½, par. 58a [Jones Ill. Stats. Ann. 85.064 (1)]) as then in effect, provides:

"No person riding in a motor vehicle as a guest, without payment for such ride, . . . shall have a cause of action for damages against the driver or operator

of such motor vehicle or its owner or his employee or agent for injury, . . . or loss, in case of accident, unless such accident shall have been caused by the wilful and wanton misconduct of the driver or operator of such motor vehicle or its owner or his employee or agent and unless such wilful and wanton misconduct contributed to the injury, . . . or loss for which the action is brought.''

The only question presented here is whether at the time of the accident appellant was guilty of wilful and wanton conduct under the guest statute. The complaint contains five wilful and wanton counts. Two negligence counts were stricken. The first count charges the road was approximately 15 feet wide, higher in the center than at either side, with a sharp down grade, covered with ice and slippery for 250 feet northeast of the bridge over Cedar Creek, where it curves abruptly to the right over the bridge; that the night was dark and rainy and the car lights penetrated only a few feet; that appellant, with knowledge of the conditions and with a conscious indifference thereto, and with wilful disregard of the consequences, wilfully, wantonly and recklessly drove his car along the highway at that point at a rate of speed greater than was reasonable and proper having regard to the traffic and use of the way and so as to endanger the life and limb of the passengers in the car.

The second count charges wilfully and wantonly driving down grade and around a curve at a high and dangerous rate of speed, in violation of section 48 of ''An Act in relation to the regulation of traffic'' (Ill. Rev. Stat. 1941, ch. 95½, par. 145 [Jones Ill. Stats. Ann. 85.177]) without slackening the speed.

The first additional count charges appellant's car was driven in such unsafe and defective condition as to endanger any person riding therein, in violation of paragraph (a) of section 102 of the same act; that appellant had knowledge, or by the exercise of reasonable care might have had knowledge, of such condition,

and wilfully and wantonly drove his car when approaching and going around the curve without decreasing speed, in violation of section 49 and paragraph (a) of section 102. The second additional count is substantially the same.

The third additional count charges that the nuts attached to the bolts in the left rear hub or brake drum for holding the wheel to the hub were permitted to become loose, and that thereby the wheel, while in motion, caused the bolts to become worn and eventually sheared the bolts off the hub; that appellant had knowledge, or by the exercise of ordinary care would have had knowledge of the defective and dangerous condition. The charge of wilful and wanton driving at a high and dangerous speed is repeated.

At the close of the testimony for appellee the court overruled appellant's motion for a directed verdict. At the close of all the testimony a ruling on a like motion was reserved until after verdict, when it was overruled, as was appellant's respective motions for judgment notwithstanding the verdict and for a new trial.

There is no conflict in the testimony as to the determinative facts. Appellee resides in Dalzell. About 8:30 on the night of the accident she and her friend Lena Mariani went to Morandi's tavern in Dalzell about two blocks from her home. There they danced with appellant and his friend Orlando Falassi. They each had one small glass of beer. It was the night of the President's birthday ball and the boys invited the girls to go with them to Cedar Point. They got into appellant's 1931 Chevrolet car. Lena Mariani sat with appellant, who drove. Appellee and Orlando Falassi sat on the rear seat. She was on the left side back of appellant. She testified they were all perfectly sober. Just prior to the accident Lena Mariani and appellant were singing. They drove from Dalzell through Peru, where appellant drove down a steep hill

in second gear, stopped before crossing some railroad tracks, and then drove south on the gravel road where the accident happened, about one mile south of Peru. The road at that point goes down grade for a distance of about 400 feet and then turns abruptly to the right across Cedar Creek bridge. As the car came down the grade the left rear wheel came off. Appellant attempted to keep it in the road, but was unable to do so. It drew over to the south side of the road and left the embankment about 50 to 75 feet from the bridge. It turned over and dropped 15 or 20 feet into the creek bed, where it landed pointed in the same direction it was going prior to leaving the embankment. It had rained about 7 o'clock that evening, but had not rained for some time before the accident. Where the gravel was smooth there would be a small patch of ice, but there was no ice where the gravel was rough. Appellant testified there was some ice extending back from the bridge 50 feet. None of the witnesses testified to seeing any ice on the road before the wheel came off. The road is from 15 to 20 feet wide, narrowing at the bridge. A witness estimated the grade of the hill at 30 per cent. He also estimated the grade of a neighboring hill at 60 per cent, and that of the hill in Peru at 70 per cent. A photograph in evidence indicates the grade of the hill where the accident happened is not nearly so steep as his estimate. Appellant travelled the road frequently and was familiar with it.

Appellee testified the car did not lessen speed before it went over the embankment. Appellant testified he did decrease the speed "some"; that he "let up on the gas." He testified he was going about 25 miles an hour, not to exceed 30. Appellee testified she did not know exactly how fast appellant was driving, but that she "judged" it was from 30 to 35 miles an hour.

All of the six bolts in the left rear wheel, except one, were sheared off at the hub. A State policeman

testified he found two of the bolts on the hill about 100 feet back from the bridge; that they "looked to me like they were loose and wore off, and they broke." The bolts were not introduced in evidence, and there is no testimony that they were actually worn to a dangerous condition.

About six weeks prior to the accident appellant had a puncture in the left rear tire. He took the wheel off and changed the tire in front of a house where he was visiting in Granville. He did not afterward have the wheel off at any time. There is no testimony that tends to show he did not put it back correctly, or that the bolts were worn at that time, or that appellant ever had any knowledge of any defective condition of the left rear wheel at any time before the accident.

The evidence shows that on the day of the accident a garage mechanic at La Salle took up the connecting rods in the motor, and did other mechanical work on the car, taking up the bearings. He testified he worked five or six hours on the car, delivered it to appellant at his home in Oglesby about 8 o'clock that evening, using the brakes from time to time, and appellant took him back to Peru; that the car did not shimmy or wobble and he heard no noise of any kind in any of its wheels.

Section 49 of the act above mentioned prohibits the driving of an automobile at a speed greater than is reasonable and proper having regard to the traffic and the use of the way or so as to endanger the life or limb or injure the property of any person. While it provides that the fact that the speed is lower than the prima facie limits therein mentioned shall not relieve the driver from reducing speed when approaching a hill crest, it is manifest that this provision relates only to such speed as is unreasonable and improper under the circumstances above mentioned. There is no evidence which tends to show that appellant was driving at a speed greater than was reasonable and proper

under the terms of section 49, or that he was driving in a wilful and wanton manner. It is apparent that neither the speed of the car, the condition of the road, nor the manner in which the car was driven had anything to do with the accident. The evidence conclusively shows the accident was caused by the left rear wheel coming off when the bolts sheared.

The law applicable in such cases is found in 5 Am. Jur., "Automobiles," sec. 235, where it is said:

"The cases are not entirely in accord regarding the liability of the owner or operator of a motor vehicle for injuries to guests by the defective condition and equipment of the automobile. It is held that a guest who comes upon the premises or enters a vehicle of another must take such premises or vehicle as he finds them and as it pleases the owner, in the exercise of his right of dominion over his own property, to maintain the same, provided, of course, such owner does not fail in the duty of informing or warning the guest of that which might be considered a trap or concealed defect, or does not, by any act of his, create a new danger. Gross negligence, within the meaning of the guest statutes, cannot be predicated upon defects in the car. It has been said that one who invites another to ride with him in his automobile does not guarantee to the guest a sound automobile; his duty extends only to refraining from increasing the danger which the guest assumes upon entering the automobile, or from adding a new danger. Reasonable care for the safety of a guest commences only when he enters the automobile; the operator owes him no duty of prior inspection, the guest taking the automobile and driver as he finds them. . . . A line of authority, apparently at variance in spirit with the cases above discussed, exists. According to this view, an invitation carries with it the assurance of some measure of security which the driver must make good by the exercise of active care; he owes

the duty of exercising reasonable care in the operation, and control of the car, in view of some known defective condition.''

The last mentioned doctrine has no application here, where it is not shown that appellant was not exercising reasonable care in operating the car, or that he knew of any defective condition or by the exercise of reasonable care he would have known thereof. Numerous cases upholding the text are to be found in the annotations in 20 A. L. R. 1014; 26 id. 1425; 40 id. 1338; 47 id. 327; 51 id. 581; 61 id. 1252; 65 id. 952; and 96 id. 1482. Among them are *Pigeon v. Lane,* 80 Conn. 237, 67 Atl. 886; *O'Shea v. Lavoy,* 175 Wis. 456, 185 N. W. 526, 20 A. L. R. 1008; *Gifford v. Dice,* 269 Mich. 293, 257 N. W. 830, 96 A. L. R. 1477; *Marple v. Haddad,* 103 W. Va. 508, 138 S. E. 113; *Joyce v. Brockett,* 205 App. Div. 770, 200 N. Y. S. 394, affirmed without opinion, 237 N. Y. 561, 143 N. E. 743; *Landry v. Hubert,* 100 Vt. 268, 137 Atl. 97; *Cleary v. Eckhart,* 191 Wis. 114, 210 N. W. 267.

The rule in this State is that to constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge, of the surrounding circumstances and conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits indifference to consequences, makes a case of constructive or legal wilfulness. (*Streeter v. Humrichouse,* 357 Ill. 234; *Jeneary v. Chicago & Interurban Traction Co.,* 306 Ill. 392.) In order that one may be held guilty of wilful or wanton conduct, it must be shown that he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indif-

ference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result. (*Lamarre v. Cleveland C. C. & St. L. Ry. Co.,* 217 Ill. App. 296; 5 Am. Jur., "Automobiles," sec. 241.)

Paragraph (a) of section 102 of the act mentioned makes it unlawful to drive on any highway an automobile which is in such unsafe condition as to endanger any person or property. Section 137 provides a penalty by fine, applicable to a violation of section 102. It is obvious there could be no conviction of a defendant charged with such a violation unless he had knowledge, or by the exercise of reasonable care would have had knowledge of such unsafe condition. It is equally plain that unless the driver of a car knew of its unsafe condition or by the exercise of reasonable care would have known of it, the driving of the car in such condition does not meet the definition of wilful and wanton misconduct. No such a showing is made here, and neither of the sections invoked by appellee is applicable. The occurrence was merely a deplorable accident, in no way attributable to any wilful or wanton misconduct of appellant, without which, by the express terms of the guest statute, there can be no recovery. Under this statute, the evidence, and the cases above cited, the trial court erred in refusing to direct a verdict for appellant. As there could be no recovery on another trial, there is no occasion to remand the cause. The judgment is reversed.

*Judgment reversed.*