**Marie Berendt, Administrator of the Estate of Beverlee Berendt, Deceased, Plaintiff-Appellant, v. William Baumann, Defendant-Appellee.**

**Gen. No. 50,763.**

First District, First Division.

April 25, 1966.

G. Kent Yowell, of Chicago (Yowell and Cessna, of counsel), for appellant.

Beverly and Pause, of Chicago (Robert O. Duffy, of counsel), for appellee.

MR. PRESIDING JUSTICE KLUCZYNSKI delivered the opinion of the court.

This is an appeal from a judgment in favor of defendant in a wrongful death action to recover damages for the death of a nonpaying automobile passenger under the "guest statute." (Ill Rev Stats 1955, c 95½, § 58a.) Recovery therein is dependent upon proof that the occurrence causing the injuries resulting in the death of the passenger was occasioned by the wilful and wanton misconduct of the defendant.

A verdict was returned in favor of the defendant and the jury answered "no" to a special interrogatory, "Was the defendant, William Baumann, guilty of wilful and wanton misconduct?" The court entered judgment on the verdict and denied the plaintiff's post-trial motion.

Upon appeal, plaintiff contends that the defendant was proven guilty of wilful and wanton misconduct as a matter of law and plaintiff was entitled to a directed verdict on the issue of liability. In the alternative, plaintiff says that the trial court erred (a) in striking portions of the complaint after proofs were closed; (b) in refusing to allow plaintiff to amend the complaint to al-

lege as one of the "actions" of wilful and wanton misconduct, the failure of defendant to keep a proper lookout, and (c) in refusing to give certain instructions tendered by the plaintiff.

The testimony in the trial was that of the deceased's mother, Marie Berendt, and that of the defendant, William Baumann, whom plaintiff called for cross-examination under section 60 (Ill Rev Stats 1965, c 110 § 60).

At the time of the occurrence, defendant was 23 years of age, employed in the drafting department of a concern located in Northlake, Illinois, about ten miles from his home in Chicago, Illinois. On Friday, November 1, 1957, he followed his usual routine of arising at about 6:00 a. m., leaving for work between 7:00 and 7:15 a. m., working from 8:30 to 5:00 o'clock p. m., and arriving home from work at about 5:15 p. m. He had supper at home, washed and dressed. He drove to the home of the deceased, Beverlee Berendt, arriving there about 8:00 p. m. He had been dating Beverlee often for some five years. On this evening they were to attend a teachers' party in Rolling Meadows at the school where Beverlee was teaching. Mrs. Marie Berendt, Beverlee's mother, said defendant would rather have stayed home on this particular evening but that Beverlee desired to attend the party given by the teachers because all of the teachers, their husbands and boyfriends would be there. Nevertheless, it was decided that they attend. On the way, they stopped off at the home of another couple, staying there approximately 45 minutes. They then proceeded to the party arriving there about 10:00 p. m. They left this party at 11:00 p. m., with another couple and went bowling at the Beverly Lanes in Arlington Heights. Some time around 1:00 p. m., Beverlee and the defendant left the bowling alleys and en route home stopped at a gas station to have the car tank filled, the windshield wiped and the oil checked.

151

Defendant was driving a 1951 Lincoln, a heavy car, which was in good mechanical condition. Leaving the gas station he proceeded toward Beverlee's home taking Cicero Avenue to Elston Avenue in Chicago. Beverlee fell asleep in the front seat on the right side, in an upright position and near the car door. Elston at Cicero is a straight street, 45 feet wide having sufficient width for two lanes of traffic in each direction. Defendant was driving in the lane nearest the center of the road. The street was fairly well lighted and the headlights on the car were on and in good working order. He testified that he was driving with both hands on the wheel when at a point in midblock, "Well, I thought I saw a dark shadow running across the street so I swerved my wheel and hit the post." The car ran into a steel light pole, inflicting injury to Beverlee, killing her. Defendant said the dark shadow was approximately in the middle of the road when he saw it, almost directly in front of his car, travelling from north to south or from his left to his right. The first time he saw the shadow was about a car length away. It was larger than a dog or a cat but smaller than a person. It might have been cast, he said, by the light of an oncoming car. As soon as he saw the shadow he reacted, swerved the wheel and the car went directly into the post. He was aware of the neighborhood, having driven through a few times and he recalled there was a lumber yard or some kind of construction place on the right-hand side.

It was stipulated into the record that at the coroner's inquest defendant, when asked if at any time when driving a car he ever did see any of these objects he talked about, he answered that he always sees some shadow or something that seems to be crossing; that it was always a shadow from somewhere.

Beverlee's mother testified that defendant was one of the nicest young men she had ever known, he didn't

drink, there was nothing unusual about him that evening and she was sure he did not have any ill will toward her daughter.

After this proof relating to the liability and other facts pertaining to damages, plaintiff rested.

Paragraph 3 of the complaint, as amended prior to the trial, read as follows:

The death of said decedent was the direct and proximate result of the wilful and wanton misconduct and gross negligence of the defendant in the following respects:

(a) In wilfully and wantonly and with gross negligence driving said motor vehicle at a high and dangerous rate of speed, contrary to and in violation of Sec 49 of the Uniform Act Regulating Traffic on Highways (c 95½, Ill Rev Stats 1957, par 146);

(b) In driving said motor vehicle with a wilful and wanton disregard for the safety of persons or property including the person of decedent, contrary to and in violation of Sec 48 of said Act. (c 95½, Ill Rev Stats 1957, par 145);

(c) In wilfully and wantonly and with gross negligence driving said motor vehicle upon a highway without at all times keeping the same under proper control;

(d) In wilfully and wantonly and with gross negligence driving said motor vehicle at a high and dangerous rate of speed, contrary to and in violation of Secs 27–40 of the Municipal Code of Chicago, making applicable the Uniform Act Regulating Traffic on Highways to all of the streets of the City of Chicago which was then and there in full force and effect.

153

(e) In wilfully and wantonly and with gross negligence driving said motor vehicle at a time when defendant knew that he was sleepy and was apt to fall asleep while driving, and thereafter permitting himself to go to sleep while driving, which resulted in the automobile being driven off the roadway and into a steel streetlight pole, causing the death of said decedent; and

(f) Otherwise carelessly and with gross negligence recklessly, improperly and with wilful and wanton disregard of decedent's safety, operating said vehicle in such a manner that it ran off the roadway and into a steel streetlight pole as aforesaid.

After the plaintiff rested, the court sustained defendant's motion to strike all of the subparagraphs of the complaint as amended except subparagraph (e). Plaintiff then moved to amend the amended complaint to add to it a subparagraph (g) "In driving said motor vehicle without keeping a proper lookout." The court denied this motion.

Defendant rested his case and moved for a directed verdict. The court reserved ruling thereon pending the verdict of the jury.

The plaintiff contends that the proof adduced was sufficient to establish, as a matter of law, that defendant Baumann was guilty of wilful and wanton conduct and in support thereof cites the cases of Bartolucci v. Falleti, 382 Ill 168, 46 NE2d 980 (1943); Clarke v. Storchak, 384 Ill 564, 52 NE2d 229 (1944); Tennes v. Tennes, 320 Ill App 19, 50 NE2d 132 (1943) and Gaiennie v. Fringer, 5 Ill App2d 403, 126 NE2d 38 (1955).

■ ■ In Bartolucci, a "non-paying guest case," the court, at pages 174, 175, said:

To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct,

and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another . . . such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness. . . . Mere violation of a statutory speed limit does not constitute the wilful or wanton misconduct required for the maintenance of an action by a guest. . . . The rate of speed and the attending circumstances must also be taken into consideration.

The Appellate Court (Bartolucci v. Falleti, 314 Ill App 551, 41 NE2d 777) reversed the trial court judgment, on a verdict for the guest passenger, without remanding and entered judgment for the defendant and against the passenger. The affirmance of the Appellate Court by the Supreme Court was based upon a conspicuous "lack of proof (a) of any consciousness on the part of defendant that his conduct would naturally and probably result in injury; (b) of any intentional disregard of a known duty, or (c) any absence of care for the life, person and property of others such as exhibited a conscious indifference to consequences." Bartolucci v. Falleti, 382 Ill 168, 176, 46 NE2d 980.

In Clarke, the gratuitous passenger was killed when the car defendant was driving "reached a point approximately one block of where it subsequently plunged through the iron post and wire-netted rail above Downey Road which was an underpass, it took a sudden turn to the left and went diagonally across the road for a distance of about 150 feet more and off the pavement on the left side of the road. After travelling off the pavement about 150 feet more, it went diagonally to the right across the road for a distance of 150 feet, at which point along the

155

highway the automobile plunged through the railing to the underpass below." The court felt that the accident was due to the wheels striking the dirt portion of the shoulder while defendant's car was travelling at 45 m. p. h., and that defendant in turning to get back on the pavement, lost control of its operation which he never regained. "Certainly," the court remarked, (p 581) "it could not be said that, under the circumstances as shown here, his act in losing control of the operation of the automobile was an intentional disregard of a known duty necessary to the safety of the person or property of another and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences or that, in doing the act or failing to act, he was conscious of his conduct, and though having no intent to injure, was conscious, from his knowledge of the surrounding circumstances and conditions, that his conduct would naturally and probably result in injury." The court affirmed the judgment of not guilty based upon the verdict of the jury.

Tennes involved an accident that occurred in the State of Wisconsin. The reviewing court said (p 37): "The State of Wisconsin does not have a guest statute as does the State of Illinois. Under the law of Wisconsin all that plaintiff was required to prove was that Mrs. Tennes [the gratuitous guest] was in the exercise of due care . . . and that the defendant was guilty of negligence which was the proximate cause. . . ." It therefore is inapplicable here.

In Gaiennie, the question of wilful and wanton conduct of the host driver was submitted to the jury resulting in a finding of guilty. The court there held that the question of wilful or wanton misconduct was one of fact for the jury to pass upon. In upholding the jury's verdict, the reviewing court was called upon to consider the sufficiency of the proof to sustain the finding. It, therefore, is not dispositive of the issue whether wilfulness or

wantonness was a question of law as plaintiff here contends.

In Wise v. Wise, 22 Ill App2d 54, 159 NE2d 500 (1959) at p 58, the court, referring to the guest passenger statute, said: "The cited statute would have no effect if a momentary lapse of attention, or inadvertence in the use of faculties, such as constitutes negligence, could be called wilful and wanton misconduct. The latter requires a *conscious* indifference to danger, and has been repeatedly referred to as an intentional disregard of a known duty necessary to the safety of others. (Citing authorities.)"

■ In our opinion the proof herein, under the authorities and principles discussed, was not sufficient to establish the guilt of defendant of wilful and wanton misconduct as a matter of law. It was a factual issue to be determined by the jury in the light of the conditions and circumstances proven. The court did not err in submitting the issue to the jury.

The case was submitted to the jury upon two theories under which the defendant could be found guilty of wilful and wanton conduct: (a) that he drove said motor vehicle without keeping *any* lookout or (b) drove when he knew he was sleepy and was apt to fall asleep while driving and thereafter permitted himself to go to sleep while driving.

■ Plaintiff admits that "ordinarily what constitutes wilful and wanton conduct is a jury question and when the jury is fully and properly instructed, its verdict is decisive. But plaintiff argues that this jury was improperly instructed as to the law.

■ We hold that the court did not err in striking subparagraphs (a), (b), (c), (d) and (f) of the amended complaint because they were not supported by the evidence in the case. We also find that error was not committed in refusing plaintiff to add the proffered subparagraph (g) that charged defendant with being guilty

157

of wilful and wanton misconduct "in driving said motor vehicle without a *proper* lookout." Such conduct cannot rest on an allegation of mere inattention, momentary lapse of attention or inadvertence in the use of faculties as quoted above from Wise. It was therefore proper for the court to submit the case on the question of whether the defendant was driving without keeping *any* lookout.

■■ Plaintiff's argument that the jury should have been permitted to consider the theory that defendant's total conduct in reacting as he did with knowledge "that he sees shadows that seem to be crossing" showed wilful and wanton conduct is without basis. In the first place, plaintiff does not allege such theory or grounds in the complaint. Moreover, the proof was that defendant had quite extensive experience in driving before the occurrence and, as judged by the decedent's mother, was a good, safe and careful driver. Furthermore, defendant did add to his testimony as to seeing shadows, that "as you drive at night, there's always some shadow or something." From the record before us, we believe the defendant's total conduct was made a proper issue by the court's instruction that the jury could consider whether defendant drove "said motor vehicle at a time when defendant knew he was sleepy and was apt to fall asleep while driving and thereafter permitted himself to go to sleep while driving." The submission of the case on this theory was justified and proper.

■■ Finally, we find no merit to plaintiff's contention that the trial judge erred in refusing plaintiff's instruction stressing the fact that ill will is not a necessary element of a wanton act. The instruction submitted by the trial judge defining "wilful and wanton conduct" was Illinois Pattern Jury Instruction Form No. 14.01. It is a succinctly expressed and widely accepted definition of "wilful and wanton conduct" as it has been interpreted under the law. See Signa v. Alluri, 351 Ill App 11, 15, 113 NE2d 475 (1953).

■■■■■■■■■

For the abovementioned reasons, the judgment of the circuit court is affirmed.

Affirmed.

MURPHY and BURMAN, JJ., concur.